```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CASSANDRA HENDERSON,                       :
                Plaintiff,                 :
                                           :       12 CV 1468 (HB)
     - against -                           :
                                           :       OPINION & ORDER
MONTEFIORE MEDICAL CENTER,                 :
MONTEFIORE HEALTH SYSTEM, and              :
IRWIN R. MERKATZ,                          :
                Defendants.                :
------------------------------------------------------------------x
```

**Hon. HAROLD BAER, JR., District Judge:**

  Plaintiff Cassandra Henderson brings both racial discrimination and retaliation claims under 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Plaintiff also brings NYSHRL and NYCHRL claims for disability discrimination and retaliation. Against Defendant Irwin Merkatz, Plaintiff also brings claims under the NYSHRL and the NYCHRL for aiding and abetting discrimination. Included in Plaintiff's substantive discrimination claims are termination, demotion, and failure-to-promote claims. On this motion, Defendants seek summary judgment on all claims. For the reasons stated below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

  The facts taken in the light most favorable to Plaintiff are set forth below. Plaintiff is a black woman who suffers from multiple sclerosis. She is board-certified in Obstetrics and Gynecology and Maternal-Fetal Medicine ("MFM"). Defendant Montefiore Medical Center employed Plaintiff as an MFM specialist from 1986 until Plaintiff's resignation in 2000. During that time, Plaintiff was also a faculty member at the Einstein College of Medicine, a Montefiore affiliate. Plaintiff was promoted from Assistant Professor to Associate Professor in 1993. Upon leaving Montefiore in 2000, Plaintiff joined nonparty Our Lady of Mercy Hospital ("OLM") as its Chief of MFM. In 2004, Plaintiff also joined the faculty of New York Medical College, an OLM affiliate, as an Associate Professor.

  In July 2008, Montefiore acquired OLM, renaming the hospital as Montefiore North. Plaintiff then resumed her employment with Montefiore, where she continued to use her title of Chief of MFM. Plaintiff also resumed her teaching responsibilities with Einstein, again

1

becoming Associate Professor in December 2008.  But shortly after the OLM acquisition, Montefiore eliminated the Chief of MFM position.  Plaintiff then stopped using that title.  Montefiore hired Dr. Nancy Judge and Dr. David Garry as Co-Directors of Obstetrics and MFM.  Both Judge and Garry are white and nondisabled.  Plaintiff submits that she was also deprived of other supervisory and teaching responsibilities due to her loss of title.

Upon her return to Montefiore in 2008, the hospital began to scrutinize the quality of Plaintiff's patient care.  Starting in May 2009 and continuing through August 2011, Montefiore's peer-review committees cited Plaintiff for eleven standard of care deviations.  Seven of these deviations were major, while four deviations were minor.  Five of Plaintiff's major deviations and one minor deviation occurred from June 2010 through February 2011.

After discovering these deviations, Montefiore began a focused review of Plaintiff's conduct.  This review led to a meeting on December 6, 2011 between Plaintiff and Gary Kalkut, Montefiore's Senior Medical Director, to discuss the quality of care issues identified with her work.  Kalkut memorialized portions of this meeting, including his observation that Plaintiff exhibited "[v]ery slow ambulation w[ith] cane—movements slow." (Williams Aff. Ex. 46, at D04441.)  Plaintiff's regular usage of a cane since 2005 is a result of her MS.  While Plaintiff expressed her concern that her peer reviews were the result of racial and disability discrimination and despite Montefiore's policy requiring an investigation of discrimination complaints, Kalkut did not investigate or report these claims to any human resources personnel.

Montefiore then retained Aaron Caughey, an outside consultant, to further review Plaintiff's conduct.  In a conference call on February 1, 2012 with Kalkut and others at Montefiore, Caughey expressed his view that Plaintiff required supervision, at least temporarily, if she were to continue to practice.  But instead, Merkatz and Kalkut decided that Plaintiff could no longer remain employed at Montefiore and she was fired on April 5, 2012.

## DISCUSSION

Summary judgment is appropriate "only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011) (quoting Fed. R. Civ. Proc. 56(a)).  The Court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*  Nevertheless, "summary judgment may be appropriate

even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

## A.  NYSHRL and § 1981 Discriminatory Termination

As with all of Plaintiff's substantive claims under state and federal law, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), governs Plaintiff's claims for discriminatory termination under § 1981 and the NYSHRL. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010); *see also Katz v. Adecco USA, Inc.*, 845 F. Supp. 2d 539, 547 (S.D.N.Y. 2012) (applying *McDonnell Douglas* to disability claims under NYSHRL).  Under *McDonnell Douglas*, Plaintiff first must make out a prima facie case of discrimination.  *Id.*  This requires a showing that (1) Plaintiff is a member of a protected class, (2) she was qualified for her position, (3) she was discharged, and (4) the discharge occurred "under circumstances giving rise to the inference of discrimination." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)).  If Plaintiff makes out a prima facie case, the burden of going forward shifts to Defendants "to offer a legitimate nondiscriminatory reason for the termination." *Id.* at 492. Plaintiff then has an opportunity "to show that the real reason for [her] termination was [discrimination]." *Id.*

### 1.  Plaintiff's Prima Facie Case and Defendant's Nondiscriminatory Reason

The bar is not high for the Plaintiff to establish her qualifications for the position. Defendants observe that Plaintiff did not perform to Montefiore's satisfaction based on her numerous patient-care infractions and Caughey's opinion that she required supervision.  And to be sure, the Second Circuit has sometimes described the qualifications prong as requiring a demonstration of "satisfactory performance" to make out a prima facie case. *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).  But despite this characterization, the Second Circuit is also clear that to make a prima facie case, "all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91–92 (2d Cir. 2001).  This minimum qualification standard is not burdensome, "especially where discharge is at issue and the employer has already hired the employee." *Id.* at 92.

Accordingly, Plaintiff has met her burden to establish her basic qualifications.  Despite Defendants' dissatisfaction, the fact remains that Plaintiff worked for Montefiore for fourteen

3

years through 2000.  After Plaintiff's initial departure, Montefiore permitted Plaintiff to return in 2008, employing her again for over three more years.  And Plaintiff's written performance reviews also reflect her qualifications:   As late as March 25, 2011—just one year before her termination—Plaintiff received above average evaluations in many different areas of her practice, with no ratings below average.  Even Caughey recommended only a period of supervision, not termination.

Finally as to the prong that requires a showing of an inference of discrimination, "the mere fact that a plaintiff was replaced by someone outside the protected class will suffice." *Glaves-Morgan v. City of N.Y.*, No. 11 Civ. 1248, 2012 WL 951859, at *6 (S.D.N.Y. Mar. 21, 2012) (quoting *Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001)).  After her termination, Plaintiff's responsibilities were reassigned to nonblack, nondisabled doctors.  While Defendants argue that a black doctor also assumed some of her responsibilities, this factual dispute is enough to send this issue to the jury.

Thus, Plaintiff has made out her prima facie case.  However, the negative appraisals of Plaintiff's work are legitimate reasons for her discharge.  On at least seven separate occasions, the peer-review committee determined that Plaintiff committed major deviations from Montefiore's standard of care.  Caughey's opinion that Plaintiff required supervision is also indicative of Plaintiff's unsatisfactory performance.  Defendants have thus met their burden of going forward.

## 2. Evidence of Discriminatory Animus

With this explanation, Plaintiff's burden is then to present sufficient evidence to allow a reasonable factfinder to conclude that "more likely than not the employer's decision was motivated, at least in part, by a discriminatory reason." *Pearson v. Unification Theological Seminary*, 785 F. Supp. 2d 141, 152 (S.D.N.Y. 2011) (quoting *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 120–21 (2d Cir. 1997)).  Plaintiff need not necessarily show that Defendants' proffered explanation is entirely false; "rather, [s]he must show that those were not the only reasons and that plaintiff's protected status contributed to the employer's decision."  *Finn v. N.Y. State Office of Mental Health-Rockland Psychiatric Ctr.*, No. 08 Civ. 5142, 2011 WL 4639827, at *11 (S.D.N.Y. Oct. 6, 2011) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 78 (2d Cir. 2001)).

Here, the record demonstrates that both Plaintiff's disability and her race may have motivated at least in part her termination. First, Kalkut met with Plaintiff shortly before she was fired and his notes suggest that Plaintiff's physical disability was on his mind. His written observations of that meeting included that Plaintiff exhibited "[v]ery slow ambulation w[ith] cane—movements slow." (Williams Aff. Ex. 46, at D04441.) Plaintiff's physical limitations are due to her MS. This note is thus probative of discriminatory animus given that it was made near the time of Plaintiff's termination by someone closely involved in the decision to fire her. *See Tomassi v. Insignia Fin. Grp.*, 478 F.3d 111, 115 (2d Cir. 2007) (decisionmaker's remarks are more probative when made near the time of termination). While Kalkut later stated at deposition that Plaintiff's mobility was not an issue, the true significance and whether it amounted to discriminatory animus is for the jury to decide. *See Terry v. Ashcroft*, 336 F.3d 128, 139 (2d Cir. 2003).

Second, sufficient evidence of racial motivation also allows Plaintiff's racial claim to proceed. During the same meeting with Kalkut, Plaintiff raised her concerns that the peer-review process was stacked against her because of both racial and disability-related animus. And Kalkut's notes confirm that Plaintiff remarked on the lack of minorities in senior positions at Montefiore. Kalkut neither personally investigated nor reported Plaintiff's allegations to human resources personnel, as mandated by Montefiore's antidiscrimination policies. Defendants counter that Caughey's retention was aimed at Plaintiff's complaints of discrimination, but whether he was retained to investigate potential discrimination or to build a paper trail for Plaintiff's termination again is for the jury to decide. Montefiore's replacement of Plaintiff with nonblack doctors and the apparent lack of response, certainly no direct response, to Plaintiff's complaints is sufficient evidence of racial animus. *See Collins v. Cohen Pontani Lieberman & Pavane*, No. 04 Civ. 8983, 2008 WL 2971668, at *10, 12 (S.D.N.Y. July 31, 2008) (supervisor's failure to investigate discrimination claim strengthens inference of discriminatory animus). Accordingly, Plaintiff's discriminatory termination claims survive summary judgment.

## B. NYSHRL and § 1981 Retaliation

I turn next to Plaintiff's § 1981 and NYSHRL retaliation claims. Plaintiff's prima facie case requires that she show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164

(2d Cir. 2010) (internal quotation marks omitted) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).

Here, the only dispute at the prima facie stage concerns the causal connection between Plaintiff's complaints about racial and disability discrimination and her termination. Defendants assert that evidence of Plaintiff's subpar performance began to accumulate before she complained of discrimination. Accordingly, the argument goes, no causal nexus with her termination could exist. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (noting that "gradual adverse job actions . . . [beginning] well before the plaintiff had ever engaged in any protected activity" undercut an inference of causation). And indeed, "[e]mployers need not suspend previously planned [actions]" once a plaintiff has engaged in protected activity. *Id.* But here, Montefiore did not consider terminating Plaintiff until after she engaged in protected activity. Defendants admit that her termination was "based on the peer reviews and [Caughey's] outside review." (Defs.' 56.1 ¶ 338 (emphasis added).) But Caughey was not even retained until after Plaintiff complained of discrimination. Only then did Kalkut "ma[ke] the decision that Dr. Henderson could not remain in the employment of Montefiore as a clinician." *Id.* As such, a jury may find causation from the four-month gap between Plaintiff's complaints and discharge. *See Slattery*, 248 F.3d at 95 ("[T]emporal proximity can demonstrate a causal nexus.").

Having established a prima facie case, it is then Defendants' burden to explain the nonretaliatory reason for Plaintiff's termination. *Hicks*, 593 F.3d at 164. As with her termination claim, Plaintiff's subpar patient care meets this burden. But despite this explanation, a reasonable factfinder could still conclude that "retaliation was a substantial reason for [Defendants'] adverse actions." *Jute*, 420 F.3d at 180. When coupled with the evidence of causation above, the same evidence suggesting discriminatory animus on Plaintiff's termination claim is sufficient to find that retaliation may have occurred. *See, e.g.*, *Ayantola v. Cmty. Technical Colls. of Conn. Bd. of Trs.*, No. 05 Civ. 957, 2007 WL 963178, at *4 (D. Conn. Mar. 30, 2007) ("[S]ince the same evidence must be presented to the jury on [Plaintiff's] retaliation claim as would be required to prove [her] claims of race, color, and national origin discrimination, . . . the proper course of action is to have a jury decide whether . . . [Defendants'] real reason for deciding [to terminate Plaintiff] was retaliation or discrimination."). I therefore deny summary judgment as to Plaintiff's retaliation claims.

### C. NYSHRL and § 1981 Discriminatory Demotion

I turn next to Plaintiff's demotion claim. *McDonnell Douglas* burden-shifting also applies here. *De la Cruz v. City of N.Y.*, 783 F. Supp. 2d 622, 637–38, 640 (S.D.N.Y. 2011) (citing *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006)). But even assuming a prima facie case, Plaintiff's demotion claim fails. Defendants claim that someone from outside Montefiore and OLM was necessary in order to ease the integration process. And Defendants also claim that Montefiore's acquisition of OLM made Plaintiff's Chief of MFM position redundant. These legitimate reasons for Plaintiff's demotion satisfy Defendants' burden of going forward. By contrast, there is no evidence that Defendants' reasons were pretextual. Plaintiff urges that Montefiore permitted Kevin Reilley to keep his leadership position, unlike Plaintiff. Reilley was also a former OLM doctor and is neither black nor disabled. But even Plaintiff admits that Reilley was eventually replaced and transferred. (Pl.'s 56.1 ¶ 410.) Thus, even if Reilley were an appropriate comparator, that he suffered the same fate as Plaintiff cannot support discriminatory intent. *See Jenkins v. N.Y.C. Transit Auth.*, 201 Fed. App'x 44, 46 (2d Cir. 2006) (§ 1981 claim fails because "no similarly situated white employee received more favorable treatment"). And without discriminatory animus, Plaintiff's demotion claims must fail.

### D. NYSHRL and § 1981 Discriminatory Failure-to-Promote

Similarly, the record does not reflect discriminatory animus as to Plaintiff's failure-to-promote claims. Plaintiff's claims here are two-fold: (1) discrimination prevented her promotion to the Co-Director positions given to Judge and Garry, and (2) discrimination prevented her academic promotion to full professor.

As with Plaintiff's other discrimination claims, *McDonnell Douglas* burden-shifting also applies here. *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998)). First, assuming that Plaintiff has established a prima facie case as to Defendants' failure to promote her to Co-Director, she nevertheless cannot carry her burden to show that discrimination motivated this failure. Like her demotion claim, Defendants respond that Montefiore needed to bring in an outside influence to facilitate OLM's coalescence into Montefiore North. Both Judge and Garry fit this requirement. Defendants thus meet their burden of going forward.

But the ultimate burden is always on the Plaintiff in these cases and here there is no evidence that Plaintiff's "protected characteristic[s] [were] at least one of the motivating factors"

in Montefiore's failure to promote her to Co-Director. *Cruz v. Oxford Health Plans, Inc.*, No. 03 Civ. 8863, 2008 WL 509195, at *5 (S.D.N.Y. Feb. 26, 2008) (citing *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000)). Plaintiff suggests that the requirement of an outside doctor is belied by the fact that Montefiore promoted Mark Levie to a leadership position at Montefiore North. But Levie had previously managed a different campus at Montefiore before moving to Montefiore North. Plaintiff thus differs from Levie in a material respect: Plaintiff came from OLM and Levie came from outside the combined Montefiore North/OLM constituency. Because Levie therefore is not an appropriate comparator, his appointment does not demonstrate discriminatory animus. *See Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 410 (S.D.N.Y. 2006) (to show disparate treatment, "the individuals with whom [Plaintiff] attempts to compare herself must be 'similarly situated in all material respects'" (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000))). Without more, Plaintiff cannot show that unlawful discrimination motivated Montefiore's failure to promote her.

In addition to the Co-Director position, Plaintiff also claims that she was not promoted to tenured professor at the Einstein College of Medicine because of discrimination. Again assuming that Plaintiff has made a prima facie case, Defendants' determination that Plaintiff had not met Einstein's academic requirements for promotion to full professor is a sufficient nondiscriminatory reason to defeat any pretext argument and deny Plaintiff tenure. Further, there is no evidence of a similarly situated comparator being treated differently, nor does she identify any statements made by her academic evaluators suggesting discriminatory animus. Instead, Plaintiff argues only that she was not given sufficient time to apply for a tenure position. (Pl.'s 56.1 ¶¶ 478–481.) But even if this were true, without additional evidence, and there is none, it is purely speculative to conclude that the real reason for this time pressure was unlawful discrimination. Accordingly, both of Plaintiff's failure-to-promote claims must fail.

**E. NYCHRL Discrimination**

Finally, Plaintiff also brings all of her discrimination and retaliation claims under the NYCHRL. The parties dispute whether *McDonnell Douglas* burden-shifting applies under the NYCHRL. *Compare Bennett v. Health Mgmt. Sys., Inc.*, 936 N.Y.S.2d 112, 123 (1st Dep't 2011) (holding that under NYCHRL summary judgment is inappropriate "once there is some evidence that at least one of the reasons proffered by defendant is false") *with Campbell v. Cellco P'ship*, 860 F. Supp. 2d 284, 295 (S.D.N.Y. 2012) ("[F]or both discrimination and

8

retaliation claims under the NYCHRL, courts continue to apply the three-step, burden-shifting framework that the Supreme Court articulated in *Mcdonnell Douglas Corp. v. Green*.") and *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 n.1 (2d Cir. 2009) ("[D]iscrimination claims brought pursuant to . . . the NYCHRL are analyzed under the Title VII framework."). But regardless which standard applies, Plaintiff also satisfies the lower burden suggested in *Bennett* on her termination and retaliation claims. Because there is sufficient evidence to reach a jury on Plaintiff's termination and retaliation claims under *McDonnell Douglas*, Plaintiff's NYCHRL termination and retaliation claims also survive.

By contrast, Plaintiff's demotion and failure-to-promote claims fail even *Bennett*'s lower burden. Even under the less stringent test, the NYCHRL still requires some showing of discriminatory animus, through pretext or otherwise. *Bennett*, 936 N.Y.S.2d at 124–25. But there is no evidence that discrimination motivated Plaintiff's failure to obtain a promotion or her loss of the Chief of MFM title. Nor is there evidence that Defendants' explanations are false. Even if Defendants' desire for a doctor outside Montefiore North included bringing in someone from a separate Montefiore constituency, Plaintiff has not shown that this reason is pretextual. And the time constraints Plaintiff faced with her tenure application are similarly insufficient to show the pretextual nature of Defendants' explanation that she failed to meet Einstein's academic requirements. Without such evidence, Plaintiff's demotion and failure-to-promote claims under the NYCHRL must also fail.

### F. Merkatz's Aiding-and-Abetting Liability

Finally, Defendants move for summary judgment as to Merkatz's aiding-and-abetting liability only on the grounds that he cannot be liable if no underlying discrimination is found. Because summary judgment is denied as to Plaintiff's termination and retaliation claims, Merkatz's aiding-and-abetting liability on those claims survives. But as with Defendants' primary liability on the failure-to-promote and demotion claims, summary judgment is also granted as to aiding-and-abetting liability on those claims. *See Caravantes v. 53rd St. Partners, LLC*, No. 09 Civ. 7821, 2012 WL 3631276, at *20 (S.D.N.Y. Aug. 23, 2012) ("Aiding and abetting is only a viable theory where an underlying violation has taken place." (quoting *Falchenberg v. N.Y. State Dep't of Educ.*, 338 F. App'x 11, 14 (2d Cir. 2009))).

## CONCLUSION

I have considered the parties remaining arguments and find them meritless. For the reasons stated above, Defendants' motion for summary judgment is GRANTED as to Plaintiff's failure-to-promote and demotion claims. Defendants' motion is DENIED as to Plaintiff's termination and retaliation claims. The Clerk of the Court is instructed to close this motion.

**SO ORDERED**
March 21, 2013
New York, New York

_____
Hon. Harold Baer, Jr.
U.S.D.J.